Filed 11/21/22 Certified for Publication 12/16/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN V. BLASER et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM, <br><br> Defendant and Appellant. | H049277 <br> (Monterey County <br> Super. Ct. No. 16CV000328) |

## I. INTRODUCTION

California State Teachers' Retirement System (CalSTRS) is the state agency responsible for managing contributions made by employees and member school districts to the State Teachers' Retirement Fund. (See Ed. Code, § 22000 et seq.; Teachers' Retirement Law.)[1] In February 2016, respondents, who are 31 retired teachers (Teachers) formerly employed by the Salinas Unified High School District (District), filed a petition for writ of mandate and a complaint for declaratory and injunctive relief against CalSTRS and the District. Teachers challenged reductions that CalSTRS had made and continued to make to their monthly retirement benefits after determining that the District had erred in its reporting to CalSTRS; those errors resulted in the overstatement of Teachers' monthly benefits. The reductions by CalSTRS adjusted ongoing monthly benefits to their

---

[1] All further statutory references are to the Education Code unless otherwise specified.

1

proper amounts and recouped prior overpayments. In July 2017, the trial court granted the petition, concluding that CalSTRS's claims to reduce Teachers' retirement benefits and collect overpayments were time-barred.

In July 2019, a panel of this court reversed, concluding the trial court had erred in holding that CalSTRS's efforts to recoup overpayments were time-barred as to *all* monthly retirement payments, both past and future. (See *Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349 (*Blaser I*).) This court found that the continuous accrual theory applied. (*Id.* at pp. 365-368.) In so concluding, we relied on our prior decision, *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340 (*Baxter*). There, the pension benefits of 11 other retired schoolteachers (collectively, the Baxter petitioners) had likewise been overstated due to reporting errors by the District, and the case thus concerned "the same periodic (monthly) pension payments" at issue in *Blaser I*. (*Blaser I*, *supra*, at p. 368.) This court held in *Blaser I* that CalSTRS was not barred from adjusting to the correct amounts Teachers' monthly benefit payments accruing on or after February 1, 2013, and it was not barred from asserting claims for prior overpayments for periodic benefits accruing on or after that date. (*Blaser I*, *supra*, at p. 378.)

In their respondents' brief in *Blaser I*, Teachers had raised the defenses of equitable estoppel and laches, which they argued precluded CalSTRS from adjusting monthly benefits or from asserting overpayment claims. Because these defenses had not been raised below and therefore the trial court had not considered them, this court remanded the case for further proceedings to determine, first, whether Teachers had forfeited the defenses by failing to assert them, and second (if the trial court determined they had not been forfeited), whether either defense served as a bar to CalSTRS's adjustment of benefits and its claims for overpayments of prior benefits. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 379.)

On remand, after briefing and argument, the trial court decided both questions in favor of Teachers. In an order filed March 16, 2021, the court ruled that Teachers were not barred by forfeiture from asserting equitable estoppel and laches, and it held that the two defenses applied. In the judgment and writ of mandate filed May 21, 2021, the court directed that CalSTRS refrain from reducing Teachers' monthly pension benefits or from seeking recovery of claimed overpayments.

CalSTRS challenges the judgment, arguing, inter alia, that (1) the undisputed evidence shows that Teachers forfeited the defenses by never asserting them prior to remand; (2) on the merits, estoppel may not be asserted in this instance against the public agency, CalSTRS, because to do so would run contrary to statutory limitations upon its conduct; and (3) laches, an equitable defense, is not available here to claims seeking money judgments.

We conclude that the equitable estoppel and laches defenses could not be asserted in this case as a matter of law. While equitable estoppel may be asserted in a proper case against a governmental entity, it "may not be invoked to directly contravene statutory limitations." (*Medina v. Board of Retirement* (2003) 112 Cal.App.4th 864, 869 (*Medina*).) In this case, the court erred in applying equitable estoppel because doing so required CalSTRS to continue to miscalculate Teachers' monthly pension benefits in contravention of the Education Code. We hold further that laches, which is an equitable defense, was unavailable to defeat the claims of law at issue here. And, related to this conclusion, because this court previously held in *Blaser I* that CalSTRS was not barred—based upon the application of the continuous accrual theory—from making benefit adjustments or from asserting overpayment claims for benefits accruing on or after February 1, 2013, laches may not be asserted to negate this prior determination. Because of these conclusions, we need not decide whether Teachers forfeited the defenses of equitable estoppel and laches by failing to raise them below prior to the appeal in *Blaser I.*

3

Accordingly, we will reverse the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Pre-Suit Background

The 31 petitioners/Teachers in the present case—like the 11 Baxter petitioners (*Baxter*, *supra*, 18 Cal.App.5th at p. 349)—are classroom teachers who had taught within the District before retiring and becoming "member[s] of CalSTRS and of its Defined Benefit Program (DB Program). A portion of Teachers' compensation was reported by the District as being deferred to Teachers' respective DB Program accounts for the purpose of their receiving postretirement benefits." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 356.)

As this court explained in *Baxter*: "Schools within the District utilized a six period schedule. [Schoolteachers] within the District typically taught five of those periods and used the additional period to prepare prospective lesson plans. Some of them, however, including [the Baxter petitioners], agreed to teach during their sixth period time for additional compensation, and to shift their preparation time to before or after the regular school day. [The Baxter petitioners] believed that this additional compensation would be credited toward their retirement plan [i.e., the DB Program, which was] . . . administered by CalSTRS." (*Baxter*, *supra*, 18 Cal.App.5th at p. 349.) Similarly here, "Teachers elected to work the sixth period for one or more school years, and in doing so, believed that their compensation for that work would be credited toward their respective DB Program accounts." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 357.) The manner in which the District reported to CalSTRS the compensation earned for sixth-period work by the Baxter petitioners and by Teachers—upon which CalSTRS based its

---

[2] This section is largely derived from *Baxter*, *supra*, 18 Cal.App.5th 340 and *Blaser I*, *supra*, 37 Cal.App.5th 349.

calculation of the schoolteachers' monthly retirement benefits—was at the heart of the controversy in both cases.[3]

We note that legislation was enacted, effective January 1, 2001, that provided supplemental benefits for members of the DB Program. (§ 25000; see Stats. 2000, ch. 74, § 69, p. 1261.) "As a result, a Defined Benefit Supplement Program (DBS Program) was established to provide, inter alia, retirement benefits that are separate from those paid under the DB Program. After the DBS Program was established by statute, the hours that CalSTRS members worked beyond full-time work (i.e., in excess of 1,000 hours), such as overtime or summer school work, were creditable to the DBS Program." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 357.)

On December 1, 2008, an accounting firm retained by CalSTRS to audit District records determined that the District had adopted a practice of coding improperly the sixth-period earnings of the Baxter petitioners as creditable to their respective DB Program accounts. Thereafter, on May 27, 2010, CalSTRS issued a draft audit report adopting this conclusion and indicated that the District's incorrect coding of sixth period earnings had resulted in 15 CalSTRS members who were sampled in the audit, including the Baxter petitioners, receiving overstated monthly retirement benefits. CalSTRS issued its final audit report on July 30, 2010, upholding the draft report's finding. (*Baxter*, *supra*, 18 Cal.App.5th at pp. 349-350.)

CalSTRS mailed the final audit report to the District and to the Baxter petitioners. (*Baxter*, *supra*, 18 Cal.App.5th at p. 371.) At the same time, "CalSTRS apprised each of the [Baxter petitioners] in separate letters that it had concluded from its final audit that

---

[3] The nature of the problem was explained in a declaration filed below by Peter Haley, director of CalSTRS's member accounts services: "[T]he reporting of the part-time compensation as part of the member's regular full-time compensation (i.e., crediting it to the DB Program) will inflate the member's DB account resulting in the member receiving an enhanced lifetime pension benefit that [he or she is] not entitled to receive."

5

the District had 'incorrectly reported (coded) your sixth period teaching assignment (extra duty) earnings . . . as creditable compensation to the Defined Benefit (DB) Program for the . . . school year ending in your retirement. Under state law, these extra duty assignment payments should have been credited to the Defined Benefit Supplement (DBS) program, thus it does not count toward the calculation of your DB retirement allowance. These reporting errors caused your monthly retirement allowance to be overstated . . . .' Each letter advised further that CalSTRS was entitled under the law to recover the overpayment by reducing future payments to each of the [Baxter petitioners] by no more than 5 percent, because the overpayment was due to error by the school system, but CalSTRS had requested that the District reimburse the overpayments on behalf of each of the [Baxter petitioners]. Lastly, CalSTRS advised each of the [Baxter petitioners] that if he or she disagreed with its determination, he or she was required to appeal it through an administrative hearing process within 90 days of the letter." (*Ibid.*, fn. omitted.)

The Baxter petitioners appealed these final audit findings on December 3, 2010. (*Baxter*, *supra*, 18 Cal.App.5th at pp. 349-350.)

The final audit report of July 30, 2010, included orders to the District to provide CalSTRS with (1) corrections to reverse the improperly credited compensation for the 15 CalSTRS members sampled in the audit " '*and all other members who for which* [the reported (coded) pay rate] *was incorrectly reported*' "; and (2) " ' "the total overpayments that had been made for the retired members." ' [Citation.]" (*Blaser I*, *supra*, 37 Cal.App.5th at p. 358.) The District did not comply with these two directives. As a result, on March 2, 2012, CalSTRS notified the Baxter petitioners that, beginning April 1, 2012, it would begin to reduce their monthly retirement benefits to their correct amounts, and it would reduce their monthly payments by five percent to collect prior

6

overpayments.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 350.)  This offset practice was specified in the Education Code, specifically, section 24616.[4]

On July 6, 2012, CalSTRS filed a statement of issues with the Office of Administrative Hearings.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 350.)  This filing, which resulted in the initiation of administrative proceedings under the Administrative Procedure Act (see Gov. Code, §§ 11340 to 11529, incl.), constituted the commencement of an action by the agency to resolve the dispute between CalSTRS and the Baxter petitioners.  (*Baxter*, *supra*, at pp. 374-375.)  After a two-day administrative hearing in February 2013, the administrative law judge (ALJ) issued a proposed decision in favor of CalSTRS.  The appeals committee of CalSTRS rejected the proposed decision, solicited additional briefing, reconsidered the record, and issued a decision in favor of CalSTRS on January 23, 2014.  (*Id.* at p. 350.)

## B.     The *Baxter* Litigation

On March 24, 2014, the Baxter petitioners challenged the administrative decision of CalSTRS's appeals committee by filing a petition for a peremptory writ of administrative mandamus under Code of Civil Procedure section 1094.5.  (*Baxter*, *supra*, 18 Cal.App.5th at p. 351.)  They argued, inter alia, that CalSTRS was barred from recovering overpayments and from taking any action to reduce the Baxter petitioners' monthly retirement benefits under the applicable statute of limitations, section 22008.  (*Baxter*, *supra*, at pp. 347-348.)  The Baxter petitioners did not dispute that their monthly benefit amounts had been miscalculated by the District.  (*Id.* at p. 347.)  On May 1, 2015, "[t]he trial court concluded that CalSTRS's claims against [the Baxter petitioners] to

---

[4] "Any overpayment made to or on behalf of any member, former member, or beneficiary, . . . shall be deducted from any subsequent benefit that may be payable under either the Defined Benefit Program, . . . , except as provided in Section 24616.5.  These deductions shall be permitted concurrently with any suit for restitution, and recovery of overpayment by adjustment shall reduce by the amount of the recovery the extent of liability for restitution."  (§ 24616.)

recover monies paid erroneously due to miscalculation of retirement benefits were time-barred, and CalSTRS was further barred from reducing [the Baxter petitioners'] future monthly benefits." (*Id.* at p. 351.)

CalSTRS filed an appeal, and this court reversed the judgment on December 12, 2017. This court concluded that the trial court was correct in finding that *some of* CalSTRS's claims were barred under the applicable three-year statute of limitations (§ 22008, subds. (a), (c)); but we found, applying the continuous accrual theory, that the trial court had erred in concluding that CalSTRS was entirely precluded from pursuing any action against the Baxter petitioners for overpayments or from adjusting future monthly payments. (*Baxter*, *supra*, 18 Cal.App.5th at p. 348.) We held, relying on California Supreme Court precedent, that "[t]he right of each of the [Baxter petitioners] to receive monthly payments, and the obligation of CalSTRS to disburse them, are continuing ones that accrue when such payments become due. [Citation.]" (*Baxter*, *supra*, at p. 380.) Accordingly, we concluded that, although CalSTRS could not adjust benefits or assert overpayment claims for monthly benefits accruing more than three years prior to July 6, 2012 (i.e., the date CalSTRS commenced the "action"), it could pursue claims for past or future payments that accrued on or after July 6, 2009. (*Id.* at p. 382.) The case was remanded to the trial court for further proceedings to address defenses of equitable estoppel and laches as a potential bar to CalSTRS's claims; those defenses had been asserted by the Baxter petitioners, but the trial court had not addressed them because of its conclusion that CalSTRS was barred by the statute of limitations. (*Baxter*, *supra*, 18 Cal.App.5th at p. 375.)

### C. *Blaser I*

"At various times between June 2014 and February 2015 [while the *Baxter* case was pending in the trial court], Teachers (with four exceptions) received correspondence from CalSTRS advising them that their respective monthly DB Program benefit payments would be reduced and that CalSTRS would collect monies from Teachers that

they had received as overpayments at the rate of 5 percent per month.  In that same time period, CalSTRS reduced the monthly retirement benefits of Teachers (with four exceptions)." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 359, fn. omitted.)

On February 1, 2016—after judgment was entered in favor of the Baxter petitioners and while CalSTRS's appeal in *Baxter* was pending—Teachers filed their (later amended) verified petition for writ of mandate and complaint for declaratory and injunctive relief.  Teachers challenged CalSTRS's reduction of their monthly retirement benefits and collection of monies to recoup prior overpayments made to Teachers.  Teachers contended, inter alia, that the statute of limitations barred CalSTRS from taking any action to reduce their retirement benefits.

On June 2, 2017, the trial court filed its intended decision finding in favor of Teachers, "conclud[ing] that CalSTRS's claims against Teachers to reduce their retirement benefits and to collect overpayments were time-barred.  It reasoned that 'by no later than July 30, 2010, [CalSTRS] was "aware of the possibility" that there were District members, other than those identified in the audit, who had received DB credit for sixth-period service . . . [but] CalSTRS did not take action until 2014, more than three years later.'  And the trial court concluded that the continuous accrual theory did not apply.  It thus rejected CalSTRS's argument that, even if the statute of limitations barred its claims in part, it was entitled to (1) recover overpayments made less than three years before it took action and (2) reduce benefits going forward." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 363-364.)  On July 10, 2017, the court entered judgment granting the issuance of a peremptory writ of mandate (1) directing CalSTRS to restore Teachers' benefit levels by including compensation for sixth period work as DB creditable, and (2) prohibiting CalSTRS from " 'revisit[ing] the issue of the inclusion of sixth period earnings in each [Teacher's] final compensation for retirement purposes' in any subsequent audit." (*Id.* at p. 364.)

This court reversed. We concluded, following *Dryden v. Board of Pension Commrs.* (1936) 6 Cal.2d 575 (*Dryden*) and *Baxter, supra,* 18 Cal.App.5th 340, that the continuous accrual theory applied. (*Blaser*, *supra*, at pp. 365-368.) We thus held that "CalSTRS may pursue a claim as to any periodic pension benefits that accrued not more than three years before CalSTRS commenced an 'action' within the meaning of section 22008[, subdivision] (a). [Citation.]" (*Id.* at p. 375, citing *Baxter*, *supra*, 18 Cal.App.5th at p. 382.)

This court held further that "the filing of Teachers' petition and complaint [on February 1, 2016,] . . . suspended (or tolled the statute of limitations as to any claims by CalSTRS against Teachers that were timely filed as of [that date]." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 378.) We reasoned that "under well-established principles governing civil litigation, the plaintiff's filing of a complaint suspends the running of the statute of limitations as to any claims by the defendant against the plaintiff that are not time-barred when the action is filed. [Citations.]" (*Blaser I*, *supra*, at p. 377.) Applying the three-year statute of limitations (§ 22008, subd. (a)), we concluded that CalSTRS was not barred from adjusting Teachers' monthly periodic payments accruing on or after February 1, 2013, and it was not precluded from recovering overpayments that had been made for benefits that had accrued on or after that date. (*Blaser I*, *supra*, at p. 378.)[5]

Lastly, this court noted that Teachers had asserted in their respondents' brief (as a final argument) that CalSTRS should be precluded from initiating an administrative

---

[5] At issue in this appeal is whether CalSTRS is precluded from (1) having made prior adjustments to correct benefit amounts so they did not include compensation for sixth-period work as DB-creditable for monthly payments accruing on or after February 1, 2013; (2) deducting from monthly benefits the amounts attributable to overpayments previously made for benefits accruing on or after February 1, 2013; and (3) correcting benefit amounts going forward so that they do not include compensation for sixth-period work as DB-creditable. For shorthand purposes, we will refer to these three actions that the trial court on remand indicated in its judgment were prohibited collectively as "benefit adjustments."

proceeding against Teachers to recoup overpayments—a proceeding which CalSTRS had not initiated previously—based upon the principles of laches and equitable estoppel. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 378.) We observed that Teachers had not raised either theory at the trial level, an observation that was specifically made by the trial court in its intended decision. (*Id.* at p. 399.) Since, we noted, both laches and equitable estoppel were questions of fact for determination by the trial court (*id.* at pp. 378-379), we remanded the case with directions that the trial court, "upon request, address whether Teachers are entitled to assert laches and/or estoppel, and, in the event it determines Teachers may do so, whether laches and/or estoppel serve as a bar to the assertion by CalSTRS of claims related to overpayments." (*Id.* at p. 379.)

### D.    *Blaser* **Proceedings on Remand**

On remand, Teachers filed a motion for leave to argue the additional defenses of laches and equitable estoppel. Teachers also requested, if leave to argue the defenses were granted, that they be granted judgment in their favor on the ground that such defenses barred CalSTRS from proceeding with benefit adjustments. Teachers argued that the evidence from the prior hearing demonstrated that the defenses were meritorious. They asserted that CalSTRS waited years after learning of the circumstances that gave rise to the miscalculation of their monthly benefits to take action in reducing them in 2014 to 2015, and even then, Teachers "were given no discernible reason for the reduction." They argued that "[t]he lack of information, and/or loss of recollection, engendered by CalSTRS's extraordinary delay in acting, has operated to the prejudiced of [Teachers]," warranting a finding of laches. Teachers argued further that CalSTRS was equitably estopped from reducing their monthly payments.

CalSTRS filed opposition to Teachers' motion.

After he superior court on remand heard argument on the motion, it issued a written ruling on March 16, 2021, in favor of Teachers. The court held that Teachers had not waived (or forfeited) the defenses of equitable estoppel and laches by failing to raise

11

them earlier.  It concluded further that Teachers had shown that the facts warranted the application of equitable estoppel and laches to bar CalSTRS's attempts to recoup past overpayments or to reduce Teachers' retirement benefits going forward.  The trial court did not address CalSTRS's position on the merits that, as a matter of law, under the circumstances of this case, Teachers could not assert the defenses of equitable estoppel or laches.[6]  On May 21, 2021, the court entered a formal judgment for the issuance of a peremptory writ of mandate directing CalSTRS to refrain from reducing Teachers' benefits, assessing overpayments, or conducting audit activity relative to Teachers' retirement benefit accounts based upon sixth-period work they had previously performed.

CalSTRS filed a timely appeal from the judgment.

## III.    DISCUSSION

### A.    Standards of Review

We will address whether the trial court erred in finding that CalSTRS was barred under the doctrine of equitable estoppel from making benefit adjustments.  Although "the existence of an estoppel is generally a question of fact" (*Albers v. Los Angeles County* (1965) 62 Cal.2d 250, 266) that is reviewed for abuse of discretion (*Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1229), "where the facts are undisputed and only one reasonable conclusion can be drawn from them, whether estoppel applies" is a legal question that is subject to de novo review (*Feduniak v. California Coastal Com.* (2007)

---

[6] The trial court also observed in its ruling that the superior court in *Baxter v. CalSTRS* (apparently on remand after appeal) had "found that laches and equitable estoppel prevented CalSTRS from recouping any overpayments and reducing [the Baxter] petitioners' retirement benefits based on the issue of sixth period earnings."  Any developments in the *Baxter* litigation subsequent to our remand of that case are not before us, are not part of this record, and are not relevant to this appeal.  We are aware that in the case involving the Baxter petitioners, CalSTRS filed a notice of appeal from a judgment (filed March 8, 2019) granting a petition for issuance of a writ of mandate. (See *Baxter v. State Teachers' Retirement System*, H047008.)  CalSTRS filed a notice of abandonment of that appeal in November 2019.  We take judicial notice of our files in that appeal.  (See *Freeman v. Schack* (2007) 154 Cal.App.4th 719, 723, fn. 3.)

12

148 Cal.App.4th 1346, 1360 (*Feduniak*)). But CalSTRS's position here is that equitable estoppel cannot be applied because doing so would require CalSTRS to conduct itself in a manner that "directly contravene[s] statutory limitations." (*Medina*, *supra*, 112 Cal.App.4th at p. 869.) Accordingly, we will review this issue of law de novo. (See *City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 543 (*City of Pleasanton*) [based upon construction of pension statutes, court concludes that argument that entity was estopped from denying that extra pay was pensionable was "barred as a matter of law"]; *Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53 [appellate court exercises "independent judgment on legal issues, such as the interpretation of statutory retirement provisions"].)

Further, we will consider whether the trial court erred in concluding that CalSTRS was barred by laches from making benefit adjustments. Although, generally, "the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances" (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 (*Miller*)) and is reviewed for substantial evidence (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67), the issue may be determined "as a matter of law where . . . the relevant facts are undisputed. [Citation.]" (*Bakersfield Elementary Teachers Assn. v. Bakersfield City School Dist.* (2006) 145 Cal.App.4th 1260, 1274.) Moreover, as we discuss, *post*, CalSTRS asserts that laches is unavailable here because it is an equitable defense that cannot be asserted against a legal claim for a money judgment. This is an issue of law that we will review de novo. (*Connolly v. Trabue* (2012) 204 Cal.App.4th 1154, 1160 (*Connolly*) [where potential application of the doctrine of laches to claim is one of law, the appellate court will review the issue de novo]; *People v. ConAgra Grocery Products Co.* (2017) 17 Cal.App.5th 51, 135 (*ConAgra*) ["whether laches is a legally available defense is a legal issue subject to de novo review"].)

13

## B.     Impact of Remand in *Blaser I*

Teachers in their respondents' brief make several assertions concerning the remand of this case in *Blaser I*, and the impact of that remand upon the matters presently on review.  We therefore address this preliminary matter before considering the merits of CalSTRS's challenges on appeal that the trial court erred by concluding that (1) Teachers had not forfeited the defenses of equitable estoppel and laches, and (2) CalSTRS was barred by principles of equitable estoppel and by the equitable defense of laches from making benefit adjustments to Teachers' monthly pension payments.

Teachers filed a petition for rehearing in *Blaser I*.  Their last argument addressed this court's discussion in the opinion concerning equitable estoppel and laches defenses that the trial court had observed in its intended decision had *not* been asserted by Teachers.  Teachers asserted that this court had improperly concluded that they had forfeited these defenses.  CalSTRS reiterated in its answer to the rehearing petition that Teachers had forfeited the equitable estoppel and laches defenses.  Significantly, neither Teachers nor CalSTRS addressed in the rehearing petition or the answer, respectively, whether the defenses could appropriately be asserted in this case.  Specifically, because equitable estoppel and laches had not been asserted by Teachers below, the legal issues presented to the trial court after remand and reviewed in the current appeal—whether estoppel was inapplicable because it would require CalSTRS to perform acts beyond its statutory authority, and whether the equitable defense of laches was unavailable because the action was one at law—were not advanced by the parties.

On August 6, 2019, this court issued an order denying the petition for rehearing and ordering that the opinion be modified in several respects.  As it concerned Teachers' failure to assert equitable estoppel and laches, the opinion was modified to delete the conclusion that the defenses had been forfeited, and replaced it with language remanding the case to the trial court to consider, upon request, whether Teachers would be permitted to assert the two defenses, and, if it found they could be asserted, "to determine whether

14

under such doctrine(s), CalSTRS is precluded from asserting claims related to overpayments not otherwise time-barred." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 379.)

In the present appeal, Teachers argue that "this Court was not persuaded" by CalSTRS's arguments in opposition to the rehearing petition in *Blaser I*, and therefore because CalSTRS "raises essentially the same issues now that could, and should, have been raised earlier[, it] . . . should now be barred from such contentions on appeal. [Citation.]" In essence, as this court understands it, Teachers assert that CalSTRS *prospectively waived or abandoned* its appellate challenges to the trial court's later findings on remand that (1) Teachers had not forfeited the unasserted defenses of equitable estoppel and laches, and (2) those defenses applied to bar CalSTRS from making benefit adjustments to Teachers' monthly payments. And Teachers argue on appeal that, in remanding the case to the trial court after considering and denying Teachers' petition for rehearing (*Blaser I*, *supra*, 37 Cal.App.5th at page 379), this court in the prior appeal "implicitly rejected" CalSTRS's contention here that laches is unavailable in this continuous accrual case.

Teachers misapprehend the effect of this court's modification order in *Blaser I* and the impact of remanding the case to the trial court. This court in its modification order in the prior appeal *did not adjudicate*—as Teachers suggest in multiple locations of their appellate brief here—that Teachers had or had not forfeited the equitable estoppel and laches defenses. Nor did this court, in modifying the opinion in *Blaser I*, determine whether or not (assuming the defenses were not forfeited) equitable estoppel or laches applied to bar CalSTRS's overpayment claim. Specifically, this court in the prior appeal did not reach the merits of the questions presented in this appeal, including (1) whether estoppel was inapplicable because it would require CalSTRS to perform acts beyond its statutory authority; (2) whether the equitable defense of laches was unavailable because the action was one at law; and (3) whether laches could be determined to apply here, notwithstanding this court's holding in *Blaser I* that under the continuous accrual theory,

15

some, but not all, of CalSTRS's actions in making benefit adjustments were time-barred. Rather, this court—because the equitable defenses had not been asserted by Teachers below and thus had not been considered in the prior proceedings (as the trial court expressly noted)—determined that these two issues should be decided initially (if requested to do so) by the trial court, and this court remanded the case for that purpose. The opinion, as modified, in *Blaser I* did not—as apparently claimed by Teachers here— act as a prospective bar to CalSTRS's challenge of any subsequent ruling by the trial court on remand, nor did it immunize that ruling from appellate review.

### C. Claim That Defenses of Equitable Estoppel and Laches Were Forfeited

#### 1. Underlying Procedural History

The procedural history related to CalSTRS's position that Teachers forfeited (or waived) the defenses of equitable estoppel and laches is undisputed.[7] Teachers did not allege equitable estoppel or laches as defenses in their verified or first amended petitions and complaints.[8] But Teachers *did assert* in both pleadings another defense to CalSTRS's claim of overpayments with respect to Teachers' pension benefits, i.e., the statute of limitations. From the record before us, it appears that the statute of limitations

---

[7] "Although the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court is often referred to as a 'waiver,' the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 , superseded by statute on other grounds as stated in *In re S.J.* (2008) 167 Cal.App.4th 953, 962; see also *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 [holding that defendant "waived the defense of the statute of limitations"].)

[8] The record in the present appeal includes selected portions of the appellate record in *Blaser I.* Certain portions of the record in *Blaser I* that are relevant in the instant appeal are not part of our appellate record here. Accordingly, after advising the parties and giving them an opportunity to state their respective positions concerning the potential inclusion of the entire appellate record in *Blaser I* in the instant appeal, and having received responses indicating that neither party had objection, we take judicial notice on our own motion of the appellate record in *Blaser I* (to the extent portions of that record are not included in the record in this case). (See Evid. Code, § 459, subd. (a).)

argument Teachers made below was based, at least chiefly, upon the same underlying facts supporting the defenses of laches and estoppel.[9]  And at the hearing in April 2017 on Teachers' petition for writ of mandate, their counsel did not contend that CalSTRS was barred from making benefit adjustments based upon principles of equitable estoppel or laches.  In the trial court's intended decision following the hearing on the writ petition, it noted that Teachers had never asserted equitable estoppel or laches, "so the court does not consider them."  Teachers raised laches and estoppel for the first time in their respondents' brief filed in August 2018 in *Blaser I*.

### 2.      *This Court Need Not Resolve Forfeiture Issue*

On appeal, Teachers fail to address CalSTRS's contention that the trial court erred in concluding that Teachers had not forfeited the right to assert the defenses of equitable estoppel and laches.  Teachers, however, made two arguments before the trial court in support of their position that they should be allowed to assert the defenses.  First, Teachers argued in their motion that they had not asserted defenses "in the Petition based on laches and estoppel because . . . [those] doctrines . . . are essentially equitable <u>defenses</u> to an action [citation]."  (Original underscoring.)  Therefore, Teachers argued, because CalSTRS's reduction of benefits (beginning in 2014) was based "on . . . no viable legal or procedural claim, . . . there was no legal theory for Petitioners to defend <u>against</u>."  (Original underscoring.)  Second, Teachers argued below that when they filed the petition and complaint, "they had no idea what the basis for [CalSTRS's] action was," and did not know (until it was determined by this court in *Blaser I*), "that the filing of the Petition[] would itself be deemed to have constituted [CalSTRS's] 'action.' "  The trial court granted Teachers leave to assert the defenses.  It found "that it would be inequitable to

---

[9] It should be noted that the two defenses of statute of limitations and laches are often raised in tandem.  (See, e.g., *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 645-646 (*Shewry*); *David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893, disapproved of on other grounds by *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1239.)

17

require them to have raised affirmative defenses based upon a later Court of Appeal['s] construction in this case as to when an 'action' commenced, which [Teachers] could not have foreseen."

CalSTRS argues on appeal that Teachers' first argument fails because it is immaterial whether the unasserted defenses were equitable or legal; Teachers should have alleged them. And CalSTRS points out that the fact that Teachers *did* assert another defense below—that CalSTRS's benefit adjustments were barred by the statute of limitations—negated their argument that they could not have alleged earlier the defenses of equitable estoppel or laches.[10] In response to Teachers' second argument, CalSTRS states that any claim that Teachers did not know "the basis for [CalSTRS's] action" does not withstand scrutiny, because Teachers "discussed the sixth[-]period compensation issue [that was the basis for reducing Teachers' benefits] *at length* in their writ petition." (Original italics.) CalSTRS argues that Teachers therefore forfeited the defenses of equitable estoppel or laches by failing to plead or otherwise assert them below. (See *Roam v. Koop* (1974) 41 Cal.App.3d 1035, 1044 [estoppel forfeited]; *Caviglia v. Jarvis* (1955) 135 Cal.App.2d 415, 420 [laches forfeited].)

As we discuss below, we conclude as issues of law that the defenses of equitable estoppel and laches were not available in this case. Therefore, it is unnecessary for us to decide whether the trial court erred in concluding that Teachers had not forfeited the unasserted defenses. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [appellate courts will not address issues whose resolution is unnecessary to the disposition of the appeal].)

---

[10] CalSTRS also notes that the attorney who represented the petitioners in *Baxter*—in which the defenses of equitable estoppel and laches *were* specifically alleged on behalf of the Baxter petitioners—was also one of the attorneys representing Teachers here.

### D. Potential Application of Equitable Estoppel Defense

#### 1. *Equitable Estoppel Generally*

The doctrine of equitable estoppel is founded on " ' "[t]he vital principle . . . that [a person] who by his [or her] language or conduct leads another to do what he [or she] would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he [or she] acted.  Such a change of position is sternly forbidden.  It involves fraud and falsehood, and the law abhors both." ' [Citation.]"  (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 488 (*Mansell*).)  "The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his injury.  [Citation.]"  (*Strong v. County of Santa Cruz* (1975) 15 Cal.3d 720, 725.)  The doctrine may be invoked to preclude a party from asserting a statute of limitations defense.  (See, e.g., *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 384.)[11]

In general, equitable estoppel "must be pleaded, either as a part of the cause of action or as a defense.  [Citation.]"  (*Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453, 460; see also *Transport Ins. Co. v. TIG Ins. Co.* (2012) 202 Cal.App.4th 984, 1001.)  The party asserting the estoppel defense bears the burden of proving its application.  (*Busching v. Superior Court* (1974) 12 Cal.3d 44, 53.)

---

[11] The doctrine of equitable estoppel is codified in Evidence Code section 623: "Whenever a party has, by his [or her] own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he [or she] is not, in any litigation arising out of such statement or conduct, permitted to contradict it."

## 2. *Estoppel Against Governmental Entity*

Equitable estoppel may be asserted as a defense, in appropriate circumstances, to defeat action by a governmental entity " 'where justice and right require it.' " (*Mansell*, *supra*, 3 Cal.3d at p. 493; see also *Feduniak*, *supra*, 148 Cal.App.4th at p. 1359 ["[t]he government is not immune from the doctrine" of equitable estoppel].)  But "[e]stoppel against the government may be applied 'only in the most extraordinary case where the injustice is great and the precedent set by the estoppel is narrow.' [Citation.]" (*Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 285.)  CalSTRS does not disagree that estoppel may be applied against a governmental entity.  But it asserts that in this instance, the trial court erred as a matter of law by applying equitable estoppel.  CalSTRS bases this position on the fact that "principles of estoppel may not be invoked to directly contravene statutory limitations." (*Medina*, *supra*, 112 Cal.App.4th at p. 869.)

The California Supreme Court has held that "it is clear 'that neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public.' [Citation.]" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 316.)  Likewise, "no court has expressly invoked principles of estoppel to contravene directly any statutory or constitutional limitations." (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 28 (*Longshore*); see also *Smith v. Governing Bd. of Elk Grove Unified School Dist.* (2004) 120 Cal.App.4th 563, 569 [estoppel may not be asserted against a public entity where doing so would "rewrite a statutory limitation on a benefit or privilege"].)

In *Medina*, *supra*, 112 Cal.App.4th 864—relied on by CalSTRS—the appellants were two County of Los Angeles (County) deputy district attorneys who had previously been employed as County deputy sheriffs. (*Id.* at p. 866.)  Under the County's public retirement system, as deputy sheriffs, the appellants were classified properly as safety members, but they should have been, but were not, reclassified as general members upon

20

becoming deputy district attorneys. (*Ibid.*) After the error was discovered several years later during an audit, the retirement association reclassified the appellants and sent them refunds for excess retirement contributions. They challenged this action by filing a petition for writ of mandate and complaint, contending (unsuccessfully) that the reclassification was barred by principles of equitable estoppel, and "they [had] obtained a vested right to be classified as safety members." (*Ibid.*)

The appellate court in *Medina* noted that the Supreme Court had held in *Longshore*, *supra*, 25 Cal.3d at pages 28 to 29, that in public employee pension cases where estoppel had been found applicable, the courts had "emphasized the unique importance of pension rights to an employee's well-being.' [Citation.] 'In each of these instances the potential injustice to employees or their dependents clearly outweighed any adverse effects on established public policy. *However*, *no court has expressly invoked principles of estoppel to contravene directly any statutory or constitutional limitations.*' [Citations.]" (*Medina*, *supra*, 112 Cal.App.4th at p. 869, original italics.) The *Medina* court found that under relevant provisions of the Government Code, it was clear that county prosecutors were not safety members, and the retirement board had no authority to classify the appellants as safety members. (*Id.* at pp. 869-870.) Holding that the appellants could not claim that the governmental entity was estopped from reclassifying them, the *Medina* court concluded: "[E]stoppel is barred where the government agency to be estopped does not possess the authority to do what it appeared to be doing. Here, respondents cannot be estopped from reclassifying appellants as general members, because they did not possess the authority to continue to classify appellants as safety members after they became district attorneys even though they appeared to be doing so. [Citations.]" (*Id.* at pp. 870-871.)

Similarly, in *Fleice v. Chualar Union Elementary School Dist.* (1988) 206 Cal.App.3d 886, 888 (*Fleice*), a schoolteacher, after working one year, was mistakenly classified by the school district as a permanent tenured employee prior to serving the

21

requisite two years of probationary service.  The district, after discovering the error, reclassified her as a probationary employee and thereafter decided not to rehire her. (*Ibid.*)  The schoolteacher filed a petition for writ of mandate to compel her rehiring as a tenured employee, which was denied.  (*Id.* at p. 889.)  On appeal, she argued, inter alia, that the school district was equitably estopped from revoking its prior erroneous grant of tenured status.  (*Id.* at pp. 889, 893.)  A panel of this court rejected this argument, acknowledging the exception "that estoppel cannot expand a public agency's powers. Thus, principles of estoppel are not invoked to contravene statutes and constitutional provisions that define an agency's powers.  [Citations.]"  (*Id.* at p. 893.)  Because, as the court found, the Education Code required teachers to serve a two-year probationary period and therefore a school board lacked the power to grant early tenure (*id.* at pp. 889-893), it concluded that equitable estoppel did not apply:  "Fleice asks the court to order a public agency to do what it has no statutory power to do. . . .  The common law doctrine of equitable estoppel does not authorize us to rewrite the Education Code."  (*Id.* at pp. 894-895.)

Further, in *City of Pleasanton*, *supra*, 211 Cal.App.4th 522, which involved circumstances not dissimilar to those presented here, a retiree (Linhart) invoked equitable estoppel where the amount of his benefits had been erroneously calculated (in his favor). In the eight years prior to Linhart's retirement, the City of Pleasanton (City) had made California Public Employees' Retirement System (PERS) contributions for him and five other employees that were calculated to include standby pay as being special compensation, and those employees believed their retirement benefits would be based in part on such standby pay.  (*Id.* at pp. 527-528.)  PERS became aware in July 2006 that standby pay had been included in the reported base pay for Linhart, and it then advised the City that "standby pay was not reportable compensation for retirement purposes and that payroll reporting for Linhart had to be corrected to exclude it."  (*Id.* at p. 528.)  In its estimate, the City had advised Linhart that his pensionable final compensation would

22

include standby pay.  (*Ibid.*)  The City, on behalf of itself and several employees, filed an unsuccessful administrative appeal.  (*Id.* at pp. 528-530.)  The City and Linhart then filed a petition for writ of mandate to compel PERS to retroactively increase the monthly retirement allowance to Linhart.  (*Id.* at pp. 525, 530.)  The trial court ruled in favor of Linhart.  (*Id.* at p. 531.)

The appellate court reversed.  It concluded from its review of the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.; PERL) and applicable regulations that Linhart's standby pay was not includable in calculating his pensionable final compensation.  (*City of Pleasanton*, *supra*, 211 Cal.App.4th at p. 537.)  The court then addressed Linhart's argument that PERS was "estopped by its own conduct from denying him higher pension benefits."  (*Id.* at p. 542.)  Noting that PERS contended, quoting *Medina*, *supra*, 112 Cal.App.4th at page 870, that "estoppel is not available 'where the government agency to be estopped does not possess the authority to do what it appeared to be doing' [citations]," the appellate court held that Linhart could not assert estoppel.  (*City of Pleasanton*, *supra*, 211 Cal.App.4th at p. 542.)  The court reasoned: "Linhart makes no claim [Government Code] section 20125 or any other provision of PERL authorized the board to make his standby pay pensionable even though it did not qualify as such under [Government Code] section 20636. . . .  Because we . . . find [Government Code] section 20636 did at all times preclude PERS from treating Linhart's standby pay as pensionable compensation, we hold any award of benefits to Linhart based on estoppel is barred as a matter of law."  (*Id.* at p. 543.)

Lastly, in *McGlynn v. State of California* (2018) 21 Cal.App.5th 548, 551 (*McGlynn*), six judges brought a petition for writ of mandate contending they were entitled to pension benefits as provided for under the Judges' Retirement System II (JRS II) in 2012 when the judges were elected, even though they did not take office until January 7, 2013.  "[O]n January 1, 2013, JRS II became subject to the provisions of the California Public Employees' Pension Reform Act of 2013 (PEPRA), which amended

23

virtually all state employee retirement systems," including JRS II. (*Ibid*., fn. omitted.) The petitioners appealed after the trial court sustained a demurrer to their petition on various grounds, including the ground that "estoppel could not apply because the state respondents could not be compelled to act beyond their authority, which they would do if they treated appellants as within pre-PEPRA JRS II." (*Id.* at p. 553.) The appellate court held that estoppel was unavailable, concluding that, notwithstanding that "state personnel told [the petitioners] several times PEPRA did not apply to them and for more than a year the state treated them as members of pre-PEPRA JRS II . . . , respondents cannot be estopped from correcting a legal mistake and ensuring that JRS II is managed in conformance with the operative statutes, including PEPRA." (*Id.* at p. 561.)

### 3. *Estoppel May Not Be Invoked by Teachers*

The underlying circumstances here, like those in the four cases discussed above, support the conclusion that estoppel is not available against the governmental entity because its invocation would require CalSTRS to take action beyond its statutory authority. Those circumstances are not in dispute and have been recited in this court's opinions in *Baxter* and *Blaser I.*

### a. **Description of Reporting (Coding) Error**

The overpayment issue was identified in the accounting firm's audit findings of December 1, 2008, in CalSTRS's later draft audit report, and its final July 30, 2010 audit report that resulted in the administrative proceeding and later writ proceeding involving the Baxter petitioners. The essence of those findings was that the District had improperly coded and reported the sixth-period earnings of CalSTRS members that were part of the audit (including the Baxter petitioners) as creditable to their respective DB Program accounts, resulting in the overstatement of their monthly pension benefits. (*Baxter*, *supra*, 18 Cal.App.5th at pp. 349-350.) As explained in the final audit: "The District incorrectly reported (coded) 11 members' extra sixth period earnings to the DB program. The District created a sixth[-]period salary schedule which added 16.66 percent (1/6) of'

24

earnings based on a regular full-time teaching assignment to the affected teachers' salaries. The District reported this extra l6.66 percent salary to the DB Program using Assignment Code 57 (full-time employee) Contribution Code l (normal member contributions). This coding along with adding the extra earnings to regular salary incorrectly resulted in crediting member compensation and employer and member contributions to the DB Program. The District is required to report the extra 16.66 percent earnings for teaching the sixth period on a separate reporting line using Assignment Code 55 (part-time employee) Contribution Code l (normal member contributions). This reporting will result in correctly crediting the employer and member contributions to the Defined Benefit Supplement (DBS) Program." It was also noted in the final audit report that it was probable that "the District also incorrectly reported (coded) these earnings for other members to CalSTRS after the 2006-07 school year." (See *id.* at p. 371.)

### b. Statutory Discussion

The District's coding and reporting of Teachers' compensation for sixth-period as DB-creditable contravened the Education Code for the reasons we discuss.[12] (Because there are several defined terms in the Education Code that are important to this analysis, for clarity, we will add bold italics wherever those terms appear in this paragraph and the succeeding five paragraphs.) Under the statutory framework, retirement allowances are calculated by the administrator, CalSTRS, based upon a member's ***compensation earnable*** in his or her final compensation period. (§§ 23134.5, subd. (a), 22135, subd. (a).)[13] Under former section 22215, subdivision (a), in effect as of January 1, 2013,

---

[12] At this court's request, the parties submitted supplemental briefing concerning whether the District's coding and reporting of Teachers' compensation for sixth-period work as DB-creditable contravened the Education Code. We have considered that briefing in our analysis here.

[13] Citations to the Education Code in this paragraph and the succeeding three paragraphs are to the versions currently in effect, unless otherwise specified. The statutes

"*compensation earnable*" was defined as "*creditable compensation* . . . , excluding service for which contributions are credited by the system to the Defined Benefit Supplement Program." (See Stats.2013, ch. 559, § 3, p. 4581, emphasis added.)[14]

"*Creditable compensation*" is "remuneration that is paid in cash by an employer to all persons who are in the same *class of employees* and is paid to an employee for performing creditable service in that position." (§ 22119.2, subd. (a), emphasis added.) Such "*creditable compensation*" includes "[s]alary or wages paid in accordance with a publicly available written contractual agreement, including, but not limited to, a salary schedule or employment agreement," and "[r]emuneration that is paid in addition to salary or wages, provided it is paid to all persons who are in the same *class of employees* in the same dollar amount, the same percentage of salary or wages, or the same percentage of the amount being distributed." (*Id.*, subd. (a)(1), (2), emphasis added.) And under that statute, "*creditable compensation*" *excludes* "[r]emuneration that is not paid in cash or is not paid to all persons who are in the same *class of employees*." (*Id.*, subd. (d)(1), emphasis added.)

Additionally, the policy considerations of "*creditable compensation*" are delineated in the statute: "This definition of '*creditable compensation*' reflects sound principles that support the integrity of the retirement fund. Those principles include, but are not limited to, consistent treatment of compensation throughout a member's career, consistent treatment of compensation among an entire *class of employees*, consistent

cited here (except section 22112.5) were amended subsequent to February 1, 2013. (Pursuant to this court's holding in *Blaser I*, CalSTRS may make monthly benefit adjustments on a going forward basis on or after February 1, 2013.) We have considered the subsequent amendments to the statutes and have concluded that they do not impact our analysis here.

[14] Section 22115, subdivision (c), currently provides: "Compensation earnable excludes creditable compensation for which contributions are credited by the system to the Defined Benefit Supplement Program."

treatment of compensation for the position, preventing adverse selection, and excluding from *compensation earnable* remuneration that is paid to enhance a member's benefits. The system shall determine the appropriate crediting of contributions between the Defined Benefit Program and the Defined Benefit Supplemental Program according to these principles, to the extent not otherwise specified pursuant to this part." (§ 22119.2, subd. (g), emphasis added.)

Further, the Education Code defines " '*class of employees*' " as "a number of employees considered as a group because they are employed to perform similar duties, are employed in the same type of program, or share other similarities related to the nature of the work being performed." (§ 22112.5, subd. (a), emphasis added.) " '*Full time*' means the days or hours of creditable service the employer requires to be performed by a *class of employees* in a school term in order to earn the annualized pay rate as defined in Section 22104.8 and specified under the terms of a collective bargaining agreement or employment agreement." (§ 22138.5, subd. (a)(1), emphasis added.)[15]

### c. Education Code Does Not Authorize Treatment of Compensation for Sixth-Period Work As DB-Creditable

Based upon the statutory framework discussed above, the District's coding and reporting of Teachers' compensation for sixth-period work as DB-creditable was erroneous and contrary to law. As a general matter, we conclude it was in contravention of the Education Code because the District's coding treated some member-teachers within the "same *class of employees*" (§ 22119.2, subd. (a), emphasis added) differently than others. Compensation for sixth-period work performed by those members—such as

---

[15] The definition "*full-time*" is relevant in determining a member's benefits. Under section 22104.8, subdivision (a), " '[a]nnualized pay rate' means the salary or wages, as described in Section 22119.2 or 22119.3, a person could earn during a school term for an assignment if creditable service were performed for that assignment on a *full-time* basis." (Emphasis added.)

27

Teachers and the Baxter petitioners—was deemed by the District to be "[c]reditable compensation," notwithstanding that it was *not* "remuneration . . . paid in cash by an employer to *all persons* who are in the same ***class of employees*." (§ 22119.2, subd. (a), emphasis added; see also *id.*, subd. (d)(1), emphasis added ["***creditable compensation***" *excludes* "[r]emuneration that is not paid in cash or is not paid to all persons who are in the same ***class of employees***"].) The coding and reporting of sixth-period earnings as DB-creditable was also contrary to the policy considerations of the Education Code that there be "consistent treatment of compensation . . . among an entire ***class of employees***." (*Id.*, § subd. (g), emphasis added.) Moreover, because the schedule of ***full-time*** work (see § 22138.5, subd. (a)(1)) for the ***class of employees*** at issue here consisted of the five teaching periods and a sixth preparation (nonteaching) period, the additional compensation paid to members who elected to teach the sixth period (and perform their preparation either before or after the workday) was creditable to the DBS Program; it was *not* creditable to the DB Program. (See § 22703, subd. (b); see also *Blaser I*, *supra*, 37 Cal.App.5th at p. 357 [after establishment of DBS Program, hours worked beyond full-time work, such as overtime or summer school work, "were creditable to the DBS Program"].)[16]

The salient consideration is that it cannot be reasonably argued that member-teachers who performed sixth-period work (such as Teachers) were in a different ***class of employees*** from teachers who taught the normal five periods and utilized the sixth period for lesson plans. They all "perform[ed] similar duties, [were] employed in the same type

---

[16] "A member's creditable service that exceeds 1.000 in a school year shall not be credited to the Defined Benefit Program. Commencing July 1, 2002, contributions by the employer and the member that are deposited in the Teachers' Retirement Fund for creditable compensation paid to the member for service that exceeds 1.000 in a school year, . . . , shall be credited to the Defined Benefit Supplement Program." (§ 22703, subd.(b).)

28

of program, [*and*] shared other similarities related to the nature of the work being performed." (§ 22112.5, subd. (a).)[17]

Therefore, the District's coding (reporting) of the compensation of CalSTRS members (including Teachers) for sixth-period work as DB-creditable was contrary to the provisions of the Education Code. This was the finding in the final audit report, and that finding was upheld by the ALJ and by the CalSTRS appeals committee after an administrative appeal by the District and the Baxter petitioners. The substance of the final audit findings—that the District's reporting of members' compensation for sixth-period work as DB-creditable was erroneous and not in compliance with the law—was not challenged by the Baxter petitioners. (*Baxter*, *supra*, 18 Cal.App.5th at p. 347 [no "dispute that the District miscalculated [the Baxter petitioners'] monthly benefit amounts"].) Nor was the substance of the findings in the final audit report challenged by Teachers in the instant case. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 369 & fn. 13.)[18]

Since the coding (reporting) of Teachers' sixth-period compensation as DB-creditable was contrary to the terms of the Education Code, estoppel cannot be asserted here to compel the agency, CalSTRS, to calculate and pay monthly benefits that erroneously include credit for work that must be credited to the DBS Program.

---

[17] We note that the statute defining "[*c*]*lass of employees*" reads in *the disjunctive* (§ 22112.5, subd. (a), emphasis added), thus indicating that any one of the three criteria will suffice. Here, all three criteria are present demonstrating that members performing sixth-period work were in the "same *class of employees*" as those who worked five teaching periods and a sixth nonteaching period.

[18] Teachers alleged in their amended petition and complaint that the District had violated the law between June 2014 and February 2015 by recoding Teachers' compensation for sixth-period work to be creditable to their DBS Program accounts, thereby reducing their pension benefits. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 363.) "But as the trial court concluded, Teachers did *not* contest the substance of the final audit's conclusion that the District had incorrectly reported CalSTRS members' sixth-period compensation as DB-creditable; instead, Teachers asserted 'technical challenges' that CalSTRS's claim was time-barred." (*Id.* at p. 369, original italics.)

29

Borrowing from *Fleice*, *supra*, 206 Cal.App.3d at pages 894 to 895: "[Teachers] ask[] the court to order a public agency to do what it has no statutory power to do. . . . The common law doctrine of equitable estoppel does not authorize us to rewrite the Education Code."

Each of the four cases discussed, *ante*, supports this conclusion. In *Medina*, *supra*, 112 Cal.App.4th 864, estoppel was unavailable because its application would compel the agency to classify the employees as safety members, resulting in the inflation of their retirement benefits, in contravention of the law. Similarly, in *Fleice*, *supra*, 206 Cal.App.3d 886, because "estoppel cannot expand a public agency's powers" (*id.* at p. 893), it could not be asserted to require the district to violate the Education Code by classifying the petitioner-teacher as a tenured employee, when she did not meet the statutory qualifications of a permanent-status employee. In *City of Pleasanton*, *supra*, 211 Cal.App.4th 522, the agency, PERS, could not be compelled, through the application of equitable estoppel, to include—as it had previously done in error—extra (standby) pay as pensionable, where under the applicable pension laws (PERL), the agency had no authority to act in that fashion. And in *McGlynn*, *supra*, 21 Cal.App.5th 548, estoppel could not be applied to compel the Board of Administration of CalPERS (California Public Employees' Retirement System) to treat petitioners as being included within the retirement plan (JRS II) under pre-PEPRA requirements, when the agency had no statutory authority to do so. As was true in each of these four cases, applying estoppel here would *require* CalSTRS, from as early as February 1, 2013,[19] to miscalculate Teachers' monthly retirement benefits to include credit for compensation that is *not* DB-creditable, in violation of the Education Code. Borrowing language from *McGlynn*, CalSTRS "cannot be estopped from correcting a legal mistake and ensuring that [the

---

[19] As this court held, CalSTRS was not barred by the statute of limitations from making adjustments to Teachers' monthly benefits accruing on or after February 1, 2013. (See *Blaser I*, *supra*, 37 Cal.App.5th at p. 378.)

Teachers' Retirement Law] is managed in conformance with the operative statutes."
(*McGlynn*, *supra*, 21 Cal.App.5th at p. 561.)

Further, equitable estoppel cannot be applied here to effectively perpetuate the erroneous calculation and payment of monthly benefits because to do so would contravene the law prohibiting a gift of public funds. "Section 6 of article XVI of the California Constitution provides that the Legislature has no power 'to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation . . . .' " (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 450.) An entity's payment of retirement benefits in an amount greater than that to which a retired public employee is entitled constitutes an impermissible gift of public funds. (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 651.)

### d.      Teachers' Additional Arguments

Teachers argue on appeal that *Medina* and *McGlynn* do not support CalSTRS's position concerning the unavailability of equitable estoppel here. While Teachers acknowledge the principle that "estoppel could not be asserted [against a government agency] in the face of a direct statutory limitation," they argue that this is not the case here. Teachers assert that because the Education Code contains "no explicit pronouncement on the creditability of sixth[-]period earnings per se," and it is simply CalSTRS's current interpretation that sixth-period compensation is not DB creditable, there is no "direct statutory limitation" preventing the application of estoppel.

We disagree. First, Teachers' argument is tantamount to their challenging the results of the July 30, 2010 final audit report of CalSTRS. Such a position is *directly contrary* to the position taken by Teachers throughout this case. Teachers *did not* raise a substantive challenge to the final audit report. Instead, as the trial court found after the original hearing on the writ petition, "Teachers did *not* contest the substance of the final audit's conclusion . . . ; instead, Teachers asserted 'technical challenges' that CalSTRS's

31

claim was time-barred." (*Blaser I*, *supra*, 37 Cal.App.5th at p. 369, original italics.)

Teachers' new position appears to be precluded under the theory of trial doctrine: "Where the parties try the case on the assumption that certain issues are raised by the pleadings, or that a particular issue is controlling, neither party can change this theory for purposes of review on appeal. [Citation.]" (*Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1041.) Second,[20] based upon the various provisions of the Education Code discussed above, CalSTRS was *prohibited by statute* in the circumstances presented here from calculating and paying monthly benefits by treating members' compensation for sixth-period work as DB-creditable. The fact that the Education Code does not proscribe such agency action by specifically addressing the treatment of compensation for sixth-period work is of no consequence to the analysis.

Lastly, Teachers cite *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567 (*Crumpler*) as holding that an agency, through application of estoppel, can "be forced to pay benefits in excess of its statutory mandate." In *Crumpler*, the PERS board sought to reclassify animal control officers (the officers) under the retirement system from local safety officers to miscellaneous members, with a corresponding reduction in retirement benefits, notwithstanding the officers' having been told upon hiring that they would be entitled to the same retirement benefits as police officers. (*Id.* at p. 572.) The *Crumpler* court acknowledged the principle applicable here, namely, that estoppel cannot " 'enlarge the power of a government agency or expand the authority of a public official.' [Citation.]" (*Id.* at p. 580.) But because there, the court identified a statute providing that the board was " 'the sole judge of the conditions under which persons may be admitted to and continue to receive benefits under [the] system' [citation]" (*id.* at p. 578), it found that the PERS board could be estopped from retroactively reclassifying the officers (*id.* at

---

[20] The court's application of the theory of the case doctrine to preclude the appellate argument is discretionary. (*Arteaga v. Superior Court* (2015) 233 Cal.App.4th 851, 868.) We will therefore consider the merits of Teachers' argument here.

p. 584).  The court reasoned that "this is not a case where the government agency 'utterly lacks the power to effect that which an estoppel against it would accomplish.' [Citation.]"  (*Ibid.*)[21]  In contrast, here, there is no statute of the type relied on in *Crumpler* that vests CalSTRS with the discretion to treat extra pay (compensation for sixth-period work performed by only some members of a class of employees) as DB-creditable.  *Crumpler* offers no support for Teachers' position.

Accordingly, the court erred in concluding that equitable estoppel applied to bar CalSTRS from making benefit adjustments for monthly payments accruing on or after February 1, 2013.  Teachers' defense that CalSTRS was equitably estopped from making benefit adjustments to eliminate compensation for sixth-period work as DB-creditable, was, as an issue of law, barred.  (See *City of Pleasanton*, *supra*, 211 Cal.App.4th at p. 543.)[22]

---

[21] The court in *Crumpler* declined to "extend estoppel to preclude the board from reclassifying petitioners prospectively . . . .  Public interest and policy would be adversely affected if [the officers], despite the discovery of the mistaken classification, were required to be continued to be carried as local safety members when all other contract members of the retirement system throughout the state performing like duties and functions are classified as miscellaneous members.  Manifestly, it would have a disruptive effect on the administration of the retirement system."  (*Crumpler*, *supra*, 32 Cal.App.3d at p. 584.)  Further, the court rejected "[the officers'] contention that the board is forever precluded from reclassifying them because they have a vested right to be classified as local safety members . . . .  [C]orrection of an erroneous classification cannot be equated to a modification or alteration of earned pension rights.  [The officers] have no vested right in an erroneous classification."  (*Id.* at pp. 585-586.)

[22] At Teachers request, we have taken judicial notice of recently enacted legislation, Assembly Bill No. 1667 (2021-2022 Reg Sess.), effective January 1, 2023.  The new legislation, inter alia, amends sections 24616 and 24617, and it creates section 24616.2, addressing the collection of the overpayment of benefits to CalSTRS's members.  The parties have not requested that this court address the impact, if any, of Assembly Bill No. 1667 upon this case, and we express no opinion on that issue.

33

### E. Potential Application of Laches Defense

We will consider next whether the trial court properly found that CalSTRS was barred by laches from making benefit adjustments.

#### 1. *Laches Generally*

As explained by the United States Supreme Court, "laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation. [Citation.] Both before and after the merger of law and equity in 1938, this Court has cautioned against invoking laches to bar legal relief. [Citations.]" (*Petrella v. Metro-Goldwyn-Mayer, Inc.* (2014) 572 U.S. 663, 678, fn. omitted (*Petrella*).) Thus, "[t]he doctrine of laches applies in equitable actions alone. [Citations.]" (*Blue Cross of Northern California v. Cory* (1981) 120 Cal.App.3d 723, 743-744.) It may be asserted as a defense in "an equitable action seeking a writ of mandamus." (*Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 601.)

Laches, as a successful affirmative defense, requires a showing of the plaintiff's unreasonable delay in filing suit, together with either the plaintiff's acquiescence in the conduct about which it complains or prejudice resulting to the defendant because of the delay. (*Miller*, *supra*, 27 Cal.3d at p. 624.) The proponent of the laches defense bears the burden of establishing its application. (*Ibid.*)

#### 2. *Unavailability of Laches Defense*

CalSTRS asserts that the trial court erred in finding that CalSTRS was barred by laches from making benefit adjustments. First, it contends that Teachers could not assert laches because it is an equitable defense that was unavailable here to defeat claims for money judgments. Second, CalSTRS asserts—related to, and further supporting the first argument—that because this court held that under the continuous accrual theory, CalSTRS's benefit adjustments were not entirely time-barred (*Blaser I*, *supra*, 37

34

Cal.App.5th at pp. 365-368), laches is unavailable as a defense to those surviving claims. We address these interrelated arguments, which both involve questions of law, below. [23]

### a. Laches as an Equitable Defense

"[I]t is well-established, both in California and generally, that laches applies to equitable actions, not actions at law. [Citations.]" (*Connolly*, *supra*, 204 Cal.App.4th at p. 1164; see also *Petrella*, *supra*, 572 U.S. at p. 678 ["courts of equity" developed laches, and "its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation"].) Even where equitable claims are combined with actions at law, laches remains unavailable as a defense to the legal claims. (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 462 (*Abbott*) [equitable claim for declaratory relief combined with claim seeking money judgment].) Indeed, Teachers, in their motion after remand explaining their reasons for not asserting the defenses of laches or equitable estoppel earlier, stated that they had not done so "because . . . [those] doctrines . . . are essentially equitable <u>defenses</u> to an action [citation]." (Original underscoring.)

In *Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 353 (*Reid*), hotel guests brought a putative class action in the form of a complaint for declaratory relief and a petition for writ of mandate in which they challenged assessments levied that they claimed constituted illegal taxes. The plaintiffs appealed from a judgment of dismissal after the trial court sustained a demurrer in part, upon statute of limitations grounds. (*Id.* at p. 354.) The plaintiffs argued that, because the primary relief they sought was equitable in nature (declaratory relief and restitution), the defense of laches, rather than a

---

[23] CalSTRS also asserts briefly on appeal that Teachers submitted evidence in support of laches (or estoppel) as to only three of the 31 petitioners in this case. CalSTRS did not develop this apparent evidentiary argument in support of its claim of error and we therefore do not consider it. (See *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 780 [appellant's undeveloped argument deemed forfeited].)

30-day statute of limitations, should have been applied by the trial court. (*Id.* at p. 362.) The appellate court found no merit to this position. It held that " 'whether laches is available in a declaratory relief proceeding depends upon the nature of the underlying claim.' [Citation.] Accordingly, laches does not apply as a defense to causes of action seeking money judgments, even where joined with claims in equity. [Citation.] . . . Plaintiffs' underlying claim is the City imposed an unlawful tax that raises approximately $25 million annually. Plaintiffs seek a legal remedy—'monies paid by Plaintiffs and the Class members for the TMD Assessment as transient occupants.' " (*Ibid.*)

We note at the outset of our discussion a procedural anomaly in considering whether, as asserted by CalSTRS, laches cannot be asserted by Teachers because it was presented as a defense to a legal, not an equitable, claim. From a strict viewpoint of the pleadings, the *parties alleging the claims*, Teachers, were the ones asserting the defense of estoppel, *not* the defendant/respondent CalSTRS defending against the claims. Thus, Teachers' unpleaded defense of laches was set in the following procedural context: (1) Rather than bringing an action to recover overpayments made to Teachers, CalSTRS, beginning in 2014, reduced Teachers' monthly payments to their correct amounts and made deductions for prior overpayments; (2) Teachers alleged in their petition and complaint that CalSTRS's reductions of their monthly benefits was improper; (3) CalSTRS defended Teachers' petition and complaint by asserting that the challenged reductions were justified because prior payments had been overstated due to the District's erroneous coding and reporting of compensation for sixth-period work as DB-creditable; and (4) Teachers, in response to CalSTRS's defense justifying the reductions, claimed on remand that CalSTRS was barred by laches from taking action to reduce the monthly benefits. (See *Blaser I*, *supra*, 37 Cal.App.5th at p. 377 [holding that "CalSTRS's conduct of reducing Teachers' monthly retirement benefits between June 2014 and February 2015 did not constitute the commencement of an 'action' to satisfy the statute of limitations under section 22008"].) At the heart of the controversy was whether

36

CalSTRS could make reductions to reflect correctly the calculation of monthly benefits and to recoup prior overpayments, or, alternatively, whether Teachers could recover for the alleged underpayment of monthly benefits. An action at law is implicated, whether viewed from the lens of Teachers' entitlement to recovery based upon underpayment of benefits, or from CalSTRS's entitlement to collect overpayments and correct prospectively the calculation of monthly benefits.

It is clear that the claims alleged by Teachers in the first amended petition and complaint to which their assertion of laches was attached were legal, not equitable, claims. An examination of Teachers' original and amended petitions and complaints confirms this conclusion. Based upon the prayer in both pleadings as to two causes of action for traditional mandate, Teachers *sought affirmative monetary relief*, namely the immediate restoration of (1) their benefits to amounts they had received before the re-reporting of sixth-period work as DBS-creditable had resulted in a reduction of their benefits; (2) amounts previously deducted after the re-reporting of sixth-period work as DBS-creditable, by "paying such amounts immediately to Petitioners, along with interest thereon at the legal rate"; and (3) amounts previously deducted from their benefits for alleged overpayments made to Teachers, by "paying such amounts immediately to Petitioners, along with interest thereon at the legal rate." Further, throughout the proceedings below (including the proceedings on remand), Teachers asserted that CalSTRS, in reducing their monthly pension payments, had deprived them of their vested benefits.[24]

---

[24] In *Blaser I*, Teachers argued against the application of the continuous accrual theory "because 'they have a vested right to their respective retirement benefit.' " (*Blaser I*, *supra*, 37 Cal.App.5th at p. 373.) This court rejected the argument: "Although we agree that Teachers clearly hold vested rights to properly calculated retirement benefits, they have no such rights, vested or otherwise, to excess payments based upon incorrect calculations." (*Ibid*.) Teachers do not renew their vested rights argument in the present appeal.

Based upon the prayer in the original and amended petitions and complaints and their contentions in the litigation, it is clear that Teachers asserted claims for money judgments, i.e., recovery of Teachers' monthly pension funds alleged to have been wrongfully withheld by CalSTRS. (See *Abbott*, *supra*, 50 Cal.2d at p.459 [claim for money judgment is "action[] at law"].) These are legal claims; they are no different than the legal claims for recovery of allegedly improper hotel assessments in *Reid*, *supra*, 24 Cal.App.5th 343. Even if Teachers' monetary claims were joined with equitable claims (declaratory relief), the equitable defense of estoppel could not be asserted against the legal claims. (*Id.* at p. 362; see also *Abbott*, *supra*, 50 Cal.2d at p. 462 [laches unavailable in action to enforce pension payments where claim involved "seek[ing] to recover money due[,] as the vested contractual right of plaintiffs" was action at law, not in equity]; *Shewry*, *supra*, 128 Cal.App.4th at pp. 645-646 [laches defense unavailable to legal claim seeking reimbursement of Medi–Cal expenditures].)[25] Further, although Teachers assert that the fact that they proceeded by filing a petition for writ of mandate suggest that the action was entirely equitable, the form of the pleading is not determinative; the fact remains that Teachers' amended petition and complaint, albeit its inclusion of declaratory relief, also sought recovery of money which constituted a legal claim. (*Reid*, *supra*, at p. 362.

### b.        Continuous Accrual Theory

This court held in *Baxter* that CalSTRS's right to make benefit adjustments was only *partially* barred under the applicable three-year statute of limitations of section 22008, subdivision (a). (*Baxter*, *supra*, 18 Cal.App.5th at p. 348.) We concluded, applying the continuous accrual theory as described by the Supreme Court in *Dryden*,

---

[25] Teachers argue on appeal that they "seek no damages, or any moneys other than to retain the benefits which they were repeatedly promised." This argument is belied by Teachers' pleadings indicating that they are clearly seeking to recover the portion of their monthly benefits they claim CalSTRS's wrongfully withheld, beginning in 2014 to 2015.

*supra*, 6 Cal.2d at pages 580 to 581, that "the right of each of the [Baxter petitioners] to receive monthly payments, and the obligation of CalSTRS to disburse them, are continuing ones that accrue when such payments become due. [Citation.]" (*Baxter*, *supra*, at p. 380.) Accordingly, only the overpayment claims asserted by CalSTRS relative to pension benefits accruing more than three years prior to the date CalSTRS commenced the "action" were time-barred. (*Id.* at p. 382).

Following *Baxter,* this court likewise applied the continuous accrual theory in *Blaser I*, holding that "CalSTRS may pursue a claim as to any periodic pension benefits that accrued not more than three years before CalSTRS commenced an 'action' within the meaning of section 22008[, subdivision] (a). [Citation.]" (*Blaser I*, *supra*, 37 Cal.App.5th at p. 375.) Therefore, in *Blaser I*, we concluded that CalSTRS was not barred by the statute of limitations from making benefit adjustments for monthly payments accruing on or after February 1, 2013. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 378.) CalSTRS argues in this second appeal that Teachers "cannot avoid" this holding by asserting laches as a bar to CalSTRS' making benefit adjustments. Teachers do not respond substantively to this argument.[26]

As discussed below, we agree with CalSTRS. Teachers' legal defense of the statute of limitations was applied *in Blaser I to* bar, *in part*, CalSTRS's efforts to reduce monthly benefits and to recoup overpayments. Teachers may not employ the equitable defense of laches to preclude CalSTRS from pursuing benefit adjustments for monthly

---

[26] Teachers argue that, in remanding the case to the trial court, this court "implicitly rejected" CalSTRS's contention here that laches is unavailable in this continuous accrual case. As discussed in part III.B., *ante*, this court did not—expressly or implicitly—decide whether, on remand, laches, assuming it was not forfeited, could be asserted by Teachers as a defense, notwithstanding the holding in *Blaser I* that the continuous accrual theory applied to permit CalSTRS to make some, but not all, of its benefit adjustments.

payments accruing on or after February 1, 2013, where asserting the defense against legal claims would circumvent application of the continuous accrual theory.

We note that there is a paucity of legal authority addressing this question. CalSTRS cites two unpublished federal cases; they are of some assistance to this court.[27] The only other case relied on by CalSTRS is *Talbot v. City of Pasadena* (1938) 28 Cal.App.2d 271 (*Talbot*), disapproved of on other grounds in *Dillon v. Board of Pension Com'rs of City of Los Angeles* (1941) 18 Cal.2d 427, 431.) *Talbot* offers support for CalSTRS's position. In *Talbot,* the widow of a fireman sued to recover pension benefits some six years after her husband's death. (*Talbot*, *supra*, at pp. 272-273.) The appellate court rejected the defendant's contention that the sustaining of a demurrer to the

---

[27] CalSTRS cites *Underwood v. Future Income Payments, LLC* (C.D. Cal., Apr. 26, 2018, No. SA CV 17-1570-DOC-DFMx) 2018 U.S. Dist. Lexis 233539 (*Underwood*). There, the district court, in connection with a motion to dismiss, held that the continuous accrual theory applied to the plaintiff's claims that were based upon the defendant's periodic monthly collection of the plaintiff's pension benefits, including violations of California law concerning usury, unfair competition, and consumer protection. (*Underwood*, *supra*, 2018 U.S. Dist. Lexis 233539.) The court, noting that the defendant had also asserted laches, concluded that "[b]ecause Plaintiff has shown that the statute of limitations does not totally bar his state law claims, the Court . . . declines to apply laches to these claims, to the extent that the claims may fall within the statute of limitation period." (*Id.* at *34, fn. 2.) CalSTRS also cites *Woods v. Hamkar* (E.D. Cal., Aug. 14, 2015, No. 2:12-cv-0562 MCE CKD P) 2015 U.S. Dist. Lexis 107411 (*Woods*). There, the plaintiff, a state prisoner, alleged claims based upon the defendants' alleged deliberate indifference to the plaintiff's medical needs, and he included a claim that the defendants had breached the terms of a settlement agreement arising out of a federal action. (*Id.* at *1.) The district court, applying the continuous accrual theory, determined that the plaintiff's claim based upon the defendants' continuing contractual duty to provide medical care was not time-barred to the extent the breaches had occurred within the four-year limitations period. (*Id.* at *12-13.) The court concluded further that "[g]iven the applicability of California's continuous accrual [theory], the court finds unpersuasive defendant Kelso's argument that plaintiff's claims are barred by laches." (*Id.* at *13, fn. 4.) We will rely on these two cases to the extent they offer some guidance on the question before us. (See *Yvanova v. New Century Mortg. Corp.* (2016) 62 Cal.4th 919, 940 [California appellate courts may cite unreported federal court decisions as persuasive authority].)

plaintiff's complaint without leave to amend based upon the applicable three-year statute of limitations was proper. (*Id.* at p. 273.) The *Talbot* court concluded that the existence of claims for pension benefits that were time-barred because they accrued more than three years before the action was filed did not justify a complete bar of the action. (*Ibid.*) In rejecting the defendants' argument that the plaintiff could not proceed because she had not made successive demands for pension benefits as they accrued, the court noted that "[t]he right, if any, to a pension is a continuing one. We do not understand that where the owner thereof has once made proper demand, and the claim is flatly rejected by the city, he [or she] must continue to make demands for the accruals on said pension." (*Id.* at p. 274.) The defendant argued further that the complaint was demurrable because the plaintiff had failed to plead facts that justified a six-year delay in filing suit, and therefore the complaint was barred by laches. (*Ibid.*) The *Talbot* court rejected this argument, concluding that "[t]he answer is that the plaintiff's right to a pension, if any, is a continuing one and that laches would not apply to the accrual, for instance, which occurred in the last month prior to the commencement of the action." (*Ibid.*)

"Under the continuous accrual theory, 'a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period. [Citation.]' [Citation.]" (*Baxter*, *supra*, 18 Cal.App.5th at pp. 378-379, quoting *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*).) "[T]he theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." (*Aryeh*, *supra*, at p. 1199.) Cases in which the theory has been applied have "include[d] a variety of instances in which the plaintiff asserted a right to, or challenged the assessment of, periodic payments under contract or under California statutes or regulations. [Citations.]" (*Baxter*, *supra*, at p. 379; see *Aryeh*, *supra*, at pp. 1198-1200.) Within this subcategory are pension cases in which the retiree's right to receive periodic benefits and

41

the plan administrator's obligation to disburse "them[] are continuing ones that accrue when such payments become due. [Citation.]" (*Id.* at p. 380, citing *Dryden*, *supra*, 6 Cal.2d at pp. 580-581; see also *Blaser I*, *supra*, 37 Cal.App.5th at pp. 366-367.)

As this court reasoned further in *Baxter*—which reasoning is equally applicable here—if the continuous accrual theory were not applied to permit benefit adjustments for periodic payments accruing within the statute of limitations, the recurring practice of the plan administrator paying, and the retiree receiving, incorrectly calculated benefits could never be remedied. (*Baxter*, *supra*, 18 Cal.App.5th at pp. 380-381.) This absence of remedy, applied here to the payment of monthly pension benefits, would work both ways: (1) A plan administrator (CalSTRS) would be precluded from correcting a system in which periodic benefits were overstated or from recouping amounts overpaid within the limitations period, thereby "permit[ting] a retiree to receive, potentially for years, monthly pension benefits that were not earned" (*id.* at p. 380); and (2) a retiree would be barred from pursuing an action for underpayment of monthly benefits that occurred within the limitations period, thereby permitting the plan administrator to escape liability from the obligation to pay timely and properly calculated benefits (*id.* at pp. 380-381). Applying the defense of laches to bar such claims by a plan administrator or by a retiree that are not otherwise barred by a specified limitations period would negate the continuous accrual theory.

The California Supreme Court has explained that the continuous accrual "theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance . . . . [¶] To address these concerns, we have long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." (*Aryeh*, *supra*, 55 Cal.4th at p. 1198.)

Applying these principles here, the plan administrator's miscalculation (whether on its own or through reliance upon information from the employer) resulting in the retiree's receipt of lower periodic benefits than that to which he or she is entitled would constitute a "breach of duty." Further, while the term "breach of duty" appears less apt in the case of a claim against a retiree, there is no question that the "obligations [of a public retirement board such as CalSTRS] . . . do not permit the payment of benefits not otherwise authorized [citation]" (*Duarte v. State Teachers' Retirement System* (2014) 232 Cal.App.4th 370, 385 (*Duarte*)), and that an action, under section 22008, subdivision (a), may be brought against a CalSTRS member to adjust benefits based upon erroneous payments made under the DB or DBS Programs (see *Baxter*, *supra*, 18 Cal.App.5th at p. 356). (See also *Blaser I*, *supra*, 37 Cal.App.5th at pp. 370-372 [rejecting Teachers' contention that continuous accrual theory was inapplicable because Teachers had not acted " 'wrongfully' "].) "[I]nequities . . . would arise" (*Aryeh*, *supra*, 55 cal.4th at p. 1198) in either instance if the aggrieved party—the underpaid retiree or the plan administrator that overpaid benefits—were prohibited from seeking redress for claims arising out of periodic payments accruing within the limitations period.

We conclude that laches cannot be asserted by Teachers as a bar to CalSTRS's making benefit adjustments for monthly pension benefits accruing within the limitations period, i.e., on or after February 1, 2013. To conclude otherwise would negate this court's prior application of the continuous accrual theory in this case, an application that was legally correct and was founded upon the theory's policy goals as identified by the California Supreme Court.[28]

---

[28] There is a potential further reason that laches cannot be applied here. Teachers, in asserting laches, are doing so as an offensive vehicle to establish their right to receive (both prospectively and retrospectively) overstated monthly pension benefits. As such, their assertion of the defense appears to run afoul of the principle that "[l]aches may be used only as a shield, not as a sword. [Citations.]" (*In re Marriage of Parker* (2017) 14 Cal.App.5th 681, 688; see also *LaPrade v. Rosinsky* (D.C. 2005) 882 A.2d 192, 198.)

### c. Summary: Teachers May Not Assert Laches

In this case, Teachers have previously asserted "the *legal defense* of the statute of limitations." (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1156, italics added.) In *Blaser I*, this court held that the statute of limitations under section 22008 barred CalSTRS in part from reducing monthly benefits and from recouping overpayments. (*Blaser I*, *supra*, 37 Cal.App.5th at p. 375.) But we applied the continuous accrual theory to conclude that CalSTRS was not time-barred from making benefit adjustments for monthly payments accruing on or after February 1, 2013. (*Id.* at p. 378.)

Teachers on remand could not assert laches to preclude CalSTRS from making benefit adjustments that were not otherwise time-barred, because laches, as an *equitable defense*, was unavailable here to an action at law. (*Reid*, *supra*, 24 Cal.App.5th at p. 362.) Moreover, because of our conclusion in *Blaser I* that Teachers' *legal defense* of the statute of limitations did not bar CalSTRS from making benefit adjustments to periodic (monthly) pension benefits accruing on or after February 1, 2013, the *equitable defense* of laches cannot serve as a basis for Teachers to override our prior holding that the continuous accrual theory applied in this instance.

As a panel of this court has explained, "The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature." (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 619; see also *Petrella*, *supra*, 572 U.S. at

---

Moreover, it is difficult to imagine how laches, based upon CalSTRS's "unreasonable delay" (*Miller*, *supra*, 27 Cal.3d at p. 624), could apply to bar its right to reduce Teachers' monthly pension benefits *prospectively*. (See *Danjaq LLC v. Sony Corp.* (9th Cir. 2001) 263 F.3d 942, 959-960 ["[l]aches stems from prejudice to the defendant occasioned by the plaintiff's past delay, but almost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm"].)

p. 678 ["[United States Supreme Court] has cautioned against invoking laches to bar legal relief"].)

Finally, as discussed in part III.D., *ante*, Teachers as a matter of law were precluded from asserting the defense of equitable estoppel, because doing so would require CalSTRS to continue to calculate and pay benefits in a manner that "directly contravene[s] statutory limitations." (*Medina*, *supra*, 112 Cal.App.4th at p. 869.) A conclusion that laches barred CalSTRS from making benefit adjustments that are not time-barred would circumvent that principle that estoppel cannot apply to compel a governmental entity to act in a way that is contrary to its statutory authority. (*Ibid.*)

Based upon our de novo review of this legal issue (*ConAgra*, *supra*, 17 Cal.App.5th at p. 135), we conclude that the trial court erred by concluding that the equitable defense of laches barred CalSTRS from making benefit adjustments that were not barred by the applicable statute of limitations.

## F.    Conclusion

Even if Teachers did not forfeit the equitable estoppel and laches defenses by failing to raise them in the proceedings below, those defenses are not maintainable here. Although equitable estoppel may be asserted against a governmental entity, the defense was unavailable here because its application would require CalSTRS to continue to miscalculate Teachers' monthly pension benefits contrary to the provisions of the Education Code. (See *Medina*, *supra*, 112 Cal.App.4th at p. 869 [estoppel against an agency "may not be invoked to directly contravene statutory limitations"].) Moreover, laches was unavailable to Teachers as a defense because (1) it is an equitable defense and unavailable here to defeat the claims of law presented here (see *Abbott*, *supra*, 50 Cal.2d at p. 462; *Reid*, *supra*, 24 Cal.App.5th at p. 362); and (2) its assertion would negate the continuous accrual theory that this court determined in *Blaser I* applied to this case (see *Blaser I*, *supra*, 37 Cal.App.5th at p. 375; *Talbot*, *supra*, 28 Cal.App.2d at p. 274). For these reasons, the judgment must be reversed.

Teachers' defenses of equitable estoppel and laches fail because, under the circumstances presented here, they may not be asserted as a matter of law. Consistent with this court's opinion in *Blaser I*, *supra*, 37 Cal.App.5th 349, CalSTRS, for any monthly pension payment accruing on or after February 1, 2013, may (1) adjust the benefit amount to exclude sixth-period work as creditable compensation under the DB Plan; (2) deduct from monthly benefits, to the extent permitted by law, amounts attributable to overpayments previously made on monthly pension benefits accruing on or after February 1, 2013; and (3) may correct monthly pension benefits going forward to amounts that do not include compensation for sixth-period work as DB-creditable.

This court acknowledges that the outcome here, based upon expectations of Teachers prior to retirement, will be disappointing to them. And the court appreciates the great contributions and sacrifices made by schoolteachers in general and by Teachers in particular that benefit our society. But pension provisions such as those contained in the Teachers Retirement Law, while " 'broadly construed in favor of those [persons] . . . intended to be benefited thereby' " (*Chaidez v. Board of Administration etc.* (2014) 223 Cal.App.4th 1425, 1431), cannot be rewritten to provide for benefits contrary to the statute enacted. (See *Fleice*, *supra*, 206 Cal.App.3d at pp. 894-895; see also *Duarte*, *supra*, 232 Cal.App.4th at p. 385 [pension provisions " ' "cannot be construed so as to confer benefits on persons not entitled thereto" ' "].) Because this court must follow the law, it must in this instance conclude that the defenses of equitable estoppel and laches are unavailable as a matter of law because their application would effectively require CalSTRS to perform acts that are beyond its statutory authority.

## IV.    DISPOSITION

The judgment entered May 21, 2021, is reversed. The court is directed to enter a new and different judgment providing as follows: "CalSTRS is barred by the three-year statute of limitations of Education Code section 22008 from asserting any claims against Petitioners related to overpayments for periodic pension benefits to them that accrued

46

more than three years before February 1, 2016. To the extent CalSTRS has previously deducted from the benefits of Petitioners monies claimed due for overpayments on periodic pension benefits accruing prior to February 1, 2013, CalSTRS is directed (as applicable) to either return such collected funds to Petitioners, or to credit said amounts against overpayments made to Petitioners with respect to monthly pension benefits accruing on or after February 1, 2013. CalSTRS, under the continuous accrual theory, is not precluded from asserting any claim regarding past overpayments, collecting upon such past overpayments, or adjusting any future monthly pension benefit payments of Petitioners, where such periodic payments accrued on or after February 1, 2013."

Appellant and respondents shall bear, respectively, its and his/her costs on appeal.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Blaser et al. v. California State Teachers' Retirement System*
**H049277**

Filed 12/16/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN V. BLASER et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>CALIFORNIA STATE TEACHERS'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Appellant. | H049277<br>(Monterey County<br>Super. Ct. No. 16CV000328)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on November 21, 2022, was not certified for publication in the Official Reports. Defendant and appellant California State Teachers' Retirement System as well as the California Public Employees' Retirement System have requested the opinion be certified for publication. Under California Rules of Court, rule 8.1105(c), the opinion is ordered published.

1

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

_____

DANNER, J.

_____

WILSON, J.

*Blaser et al. v. California State Teachers' Retirement System*
**H049277**

Trial Court:                                          Monterey County Superior Court
                                                      Superior Court No.: 16CV000328


Trial Judge:                                          Hon. Robert O'Farrell


Attorneys for Plaintiffs and Respondents:            Barry Jay Bennett
Steven V. Blaser et al.                               Ann Marie Bennett
                                                      Law Offices of Bennett, Sharpe & Bennett Inc.

                                                      Robert E. Rosenthal
                                                      Paul Anthony Rovella
                                                      JRG Attorneys at Law


Attorneys for Defendant and Appellants:              Robert J. Stumpf Jr.
California State Teachers' Retirement                 Raymond Charles Marshall
System                                               Sheppard Mullin LLP


Attorney for Real Party in Interest:                 Eric James Bengtson
Salinas Union High School District                   Davis & Young, APLC


*Blaser et al. v. California State Teachers' Retirement System*
**H049277**